**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BETTINA M. WHYTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-485-GKF-FHM |
| | ) | |
| PRICEWATERHOUSECOOPERS LLP, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Bettina M. Whyte ("Whyte," or "Trustee") brought this suit as Trustee of the SemGroup Litigation Trust in the District Court of Tulsa County, Oklahoma. Defendant PricewaterhouseCoopers, LLP ("PwC") removed the action to this federal court. Whyte seeks remand of the case back to state court.

## I. Background

Whyte is the court-approved holder and assignee of all claims and causes of action formerly held by the bankruptcy estates of SemGroup L.P. and certain of its subsidiaries (collectively "SemGroup"). PwC was the outside auditor for SemGroup from 2004 to 2008. SemGroup sought bankruptcy protection under Chapter 11 of the Bankruptcy Code on July 19, 2008. On October 28, 2009, the U.S. Bankruptcy Court for the District of Delaware confirmed SemGroup's Chapter 11 plan of reorganization. One feature of the reorganization plan was the transfer of SemGroup's rights of action to the Litigation Trust, which is administered by Whyte as Trustee. The Litigation Trust will pay out any net recoveries it makes to former creditors of SemGroup who hold shares in the

Trust.  The Plan explicitly reserves non-exclusive bankruptcy court jurisdiction over "all motions, adversary proceedings, applications, and contested or litigation matters" which are "instituted by the Reorganized Debtors or the Litigation Trust" as to any non-core matters. (Dkt. #31-2, p.42). Whyte brought suit in state court, asserting claims against PwC for professional negligence, violation of the Oklahoma Accountancy Act, and breach of fiduciary duty.  PwC removed the case to this federal court on July 27, 2010.

## II.  Subject Matter Jurisdiction

### A. "Related To" Jurisdiction

Federal courts have limited jurisdiction and the burden is on the party asserting jurisdiction to establish authority for the exercise of such jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  PwC argues this court has jurisdiction pursuant to 28 U.S.C. § 1334(b), which provides federal jurisdiction over civil proceedings that are "related to cases under title 11."  The Tenth Circuit has applied the widely accepted "*Pacor* test" for determining when a civil proceeding is "related to" a bankruptcy proceeding. That test is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984). Courts have offered a number of examples of proceedings which may be "related to" a bankruptcy. "For example, courts will exercise jurisdiction over post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization."  *In re CF&I Fabricators of Utah, Inc.*, 150 F.3d 1233, 1237 (10th Cir. 1998) (quoting underlying district court decision with approval).  In addition, a "proceeding is related to the bankruptcy if the outcome could alter the

2

debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *Gardner*, 913 F.2d at 1518  (citing *Pacor*, 743 F.2d at 994).  The U.S. Supreme Court has stated, "[p]roceedings 'related to' the bankruptcy include . . . causes of action owned by the debtor which become property of the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

Whyte suggests that, in a post-confirmation proceeding such as this, the court ought to follow the Third Circuit in requiring a "close nexus" between the claim or dispute and the bankruptcy plan or proceeding. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-68 (3rd Cir. 2004).  Other courts have applied varying standards to determine whether a suit is related to a confirmed bankruptcy plan. *See Id.; In re Haws*, 158 B.R. 965, 970 (Bankr. S.D. Tex. 1993) (applying a "significant effect" test); *In re Refco, Inc. Sec.*, 628 F. Supp. 2d 432, 442-43 (S.D.N.Y. 2008) (requiring both a "close nexus" and retention of jurisdiction by the plan); *In re Federalpha Steel LLC*, 872 B.R. 872, 880 (N.D. Ill. B.R. 2006) (stating "related to" jurisdiction is "sharply reduced" after confirmation of a Chapter 11 plan and must affect the debtor's estate or allocation of property among creditors); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (finding that the *Pacor* formulation "may be somewhat overbroad in the post-confirmation context").  To date, the Tenth Circuit has not adopted a supplemental test to be applied after confirmation of a Chapter 11 plan.

This court need not adopt the "close nexus" or another supplemental test to resolve the jurisdictional issue presented here.  Federal statutory law establishes federal jurisdiction over civil proceedings that are "related to cases under title 11," and makes no distinction between pre and post-confirmation proceedings. 28 U.S.C. § 1334(b).  This court uses the legal standards set forth in 28

U.S.C. § 1334(b) and existing Tenth Circuit precedent to decide whether it has "related to" jurisdiction over Whyte's claims.

## B.  Split of Authority

There is a split of authority as to whether, under facts similar to those in this case[1], a federal court has "related to" jurisdiction over claims assigned to a litigation trustee. On the one hand, federal courts in the Third Circuit, the Northern District of Illinois, the District of Delaware, and the Southern District of Texas have held they had no "related to" jurisdiction. *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 168 (3rd Cir. 2004) (finding no "related to" jurisdiction over accounting malpractice claims against firm that provided tax and accounting services to a litigation trust established under a Chapter 11 plan); *In re Federalpha Steel*, 341 B.R. 872 (Bankr. N.D. Ill. 2006) (dismissing for lack of subject matter jurisdiction certain causes of action transferred to a creditors' trust by a confirmed plan); *In re Insilco Tech.*, 394 B.R. 747 (Bankr. D. Del. 2008) (holding it had no subject matter  jurisdiction over pre-petition state law claims brought by trustee of a creditors' trust, where there was no "close nexus" between the claim and the bankruptcy plan or proceeding); *In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993) (holding the court did not have subject matter jurisdiction when pre-petition claims were brought by trustee of trust created under amended plan). On the other hand, district courts in the Southern District of New York and the District of Columbia have exercised "related to" jurisdiction in cases with facts similar to those in this case. *In re Refco,*

---

[1]  The key facts here are: 1) there is a confirmed bankruptcy plan; 2) the claims at issue arose pre-petition; 3) the claims have been transferred to a Litigation Trust; 4) the Plan explicitly reserves non-exclusive jurisdiction over non-core litigation instituted by the Litigation Trustee; and 5) SemGroup's creditors will ultimately collect on any net recoveries the Litigation Trust is able to secure.

*Inc. Sec.*, 628 F. Supp. 2d 432, 441-45 (S.D.N.Y. 2008) (holding subject matter jurisdiction existed over pre-petition claims against the debtor's senior executives brought by a litigation trustee after confirmation);  *In re Premium Escrow Serv., Inc.*, 342 B.R. 390, 401 (Bankr. Dist. Col. 2006) (holding bankruptcy court had post-confirmation jurisdiction over claims trasferred by a debtor's plan to a litigation trust).

The Third Circuit's reasoning in *Resorts International* offers the most persuasive articulation of the argument to deny "related to" jurisdiction in a case such as this.[2]  In *Resorts*, a litigation trust brought suit against PwC for professional malpractice and breach of contract in connection with accounting services performed for the litigation trust.  The principal allegation was that PwC had erroneously reported in its audit that accrued interest on the litigation trust's accounts belonged to the debtor rather than the trust.  The trust also sued the debtor in a separate suit over entitlement to the accrued interest.  The Third Circuit observed that the beneficiaries of the litigation trust had "exchanged their creditor status to attain rights to the litigation claims." *Resorts*, 372 F.3d at 169. As a result, the beneficiaries "no longer have the same connection to the bankruptcy proceeding as when they were creditors of the estate," and their connection to the bankruptcy plan or proceeding is "more attenuated." *Id.* at 170.  Although the litigation trust's claims were once assets of the estate, the appeals court concluded "that alone does not create a close nexus to the bankruptcy plan or proceeding sufficient to confer bankruptcy jurisdiction." *Id.* at 169. The court observed that the litigation trust was created "in part so that the Plan could be confirmed and the debtor freed from bankruptcy court oversight without waiting for the resolution of the litigation claims." *Id.*

_____

[2]Whyte notes that PwC was a party in *Resorts*, where it made a number of arguments contrary to its position here.  Nonetheless, PwC is not estopped from taking a different position in this case.

Moreover, "if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant." *Id.* at 170. The Third Circuit concluded that such a result would "widen the scope of bankruptcy court jurisdiction beyond what the Congress intended . . ." *Id.*

The Bankruptcy Court for the Northern District of Illinois took a similar approach in *In re Federalpha Steel*, 341 B.R. 872 (Bankr. N.D. Ill. 2006). The facts in that case are similar to those presented here: pre-petition claims were pursued by a litigation trust organized to benefit creditors after plan confirmation. The court concluded it lacked jurisdiction after applying the "strict interpretation of 'related to' jurisdiction" used in the Seventh Circuit. *Id.* at 880. The court reasoned that once claims were transferred to a litigation trust, "there was no longer a question of allocation of estate property among creditors." *Id.* at 881. Moreover, a dismissal would "simply deprive the Trust of one forum in which to have those claims decided. It will not deprive the Trust of the claims themselves . . ." *Id.* at 882. The court acknowledged the "formalistic, even mechanical" result of its approach, but concluded that "[t]he more mechanical the application of a jurisdictional rule, the better. The chief and often the only virtue of a jurisdictional rule is clarity." *Id.* at n.6 (quoting *Hoagland v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 740 (7th Cir. 2004)).

The Bankruptcy Court for the District of Columbia has taken a different approach, holding it had "related to" jurisdiction over a pre-petition claim brought by a trustee after confirmation of a reorganization plan. *In re Premium Escrow Serv., Inc*., 342 B.R. 390, 401 (Bankr. Dist. Col. 2006). The bankruptcy court acknowledged the split of authority as to whether "related to" jurisdiction exists when the only tie to the bankruptcy is that the plaintiff is "representing a group

of creditors appointed pursuant to the confirmed plan of reorganization." *Id.* at 397. The court held that a bankruptcy court has post-confirmation jurisdiction over a claim raised by a litigation trust, if the litigation trust satisfies three requirements: 1) the plan preserves jurisdiction over the claims, 2) the person seeking to enforce the claim must be appointed and be a representative of the estate to benefit the estate and particularly the unsecured creditors, and 3) the claim asserted must have belonged to the debtor prior to confirmation. *Id.* at 400-01.

The United States District Court for the Southern District of New York held it had "related to" jurisdiction where a litigation trustee brought claims against insiders, professionals, and advisors of the debtor. *In re Refco, Inc. Sec.*, 628 F. Supp. 2d 432, 441-45 (S.D.N.Y. 2008). The court held that "related to" jurisdiction is appropriate in a post-confirmation setting when there is a "close nexus" with the bankruptcy and when the plan provides for retention of jurisdiction over the dispute. *Id.* at 442-43 (citations omitted). The court reasoned that because the claims did not "belong to the litigation trust personally" but were transferred by the bankruptcy plan, the "implementation" and "execution" of the confirmed plan were at issue because the Trustee was given the power to prosecute the action under the terms of the Plan. *Id.* at 443. The close nexus between the Trustee's claims and the bankruptcy proceeding was further evidenced by the fact that any funds recovered by the Trustee would be distributed to unsecured creditors. *Id.* The court concluded that a litigation trust was not a "vehicle for escaping federal jurisdiction" but rather is a device "to allow a Chapter 11 debtor to focus pre-confirmation on the more pressing needs of its reorganization or liquidation while deferring issues regarding . . . causes of action . . . until after confirmation of its plan." *Id.* at 444 (citations omitted).

**C. Application**

In view of the following factors present in this case and the law of this Circuit, the court is persuaded that this suit is "related to" the bankruptcy plan.  First, the Plan established the Litigation Trust.  Second, the Plan reserved non-exclusive jurisdiction over litigation matters instituted by the Litigation Trust.  Third, the Trustee is a representative of the estate for the benefit of Allowed Senior Notes Claims, Allowed Lender Deficiency Claims, and Allowed General Unsecured Claims. See ¶ 1.3, SemGroup Litigation Trust Agreement, Dkt. #31-3, p.8.  The Trustee therefore qualifies as a representative of the estate under Tenth Circuit caselaw.  "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *Citicorp Acceptance Co., Inc. v. Robinson (In re Sweetwater)*, 884 F.2d 1323, 1327 (10th Cir. 1989).  Fourth,  successful recovery by the Trustee would benefit the creditors.  Generally, "courts will exercise jurisdiction over post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization." *In re CF&I*, 150 F.3d at 1237 (quoting underlying district court decision with approval).  The fact that the claims are brought by a litigation trust does not divest this court of "related to" jurisdiction. Because this action will "sufficiently affect" creditors' recoveries if the Trustee is successful, the matter is sufficiently "related to" the bankruptcy case to establish subject matter jurisdiction.  Fifth and finally, the claims asserted belonged to the debtor prior to confirmation.  Generally, pre-petition causes of action owned by the debtor which become property of the estate are "related to" the bankruptcy. *Celotex*, 514 U.S. at 307 n.5.

This is not to say that any cause of action held by a litigation trust will always be "related to" the bankruptcy.  There may be cases where the claim asserted did not belong to the debtor prior

8

to confirmation or where the Plan does not reserve jurisdiction over the claim. In this case, however, the asserted claims belonged to the debtor prior to confirmation, the Plan explicitly reserved non-exclusive bankruptcy court jurisdiction over litigation matters instituted by the Litigation Trust, and the matter sufficiently affects creditors' recoveries under the plan.

### III. Mandatory Abstention

A federal court is compelled to abstain when:

> "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 . . ., with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

28 U.S.C. § 1334(c)(2). The parties dispute only whether this suit can be "timely adjudicated" in a state forum.

The burden of proving timely adjudication is on the party seeking abstention. *In re Midgard Corp.*, 204 B.R. 764, 778 (Bankr. 10th Cir. 1997).[3] Courts interpreting the phrase "timely adjudication" have "focused on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case." *Id.* In making that determination, courts have considered:

> "some or all of the following factors: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been

---

[3]Both parties concede that *Midgard* is not binding because it was decided by a bankruptcy appellate panel. *See* 28 U.S.C. §158(b). Nonetheless, *Midgard* is persuasive, having been cited with approval dozens of times by federal courts across the country.

> commenced); (3) status of the proceeding in the bankruptcy court; (4)
> the complexity of the issues to be resolved; (5) whether the parties
> consent to the bankruptcy court entering judgment in the non-core
> case; (6) whether a jury demand has been made; and (7) whether the
> underlying bankruptcy case is a reorganization or liquidation case.."

*Id.* at 778-79 (citations omitted). The "nature of the bankruptcy case is the single most important

factor to be considered." *Id.* at 779. The appellate panel distinguished between cases where a

Chapter 11 reorganization is pending and those where a plan has been confirmed:

> "[I]n a . . . chapter 11 case with a confirmed liquidating plan, where
> the primary concern is the orderly accumulation and distribution of
> assets, the requirement of timely adjudication is seldom significant.
> Moreover, timely adjudication may be of little significance in a
> chapter 11 case with a confirmed plan of reorganization if
> implementation of the plan is not centered around the resolution of
> the state court proceeding. This is generally evident when the plan
> does not mention the state court proceeding and the party charged
> with implementing the confirmed plan is the party seeking to litigate
> the proceeding in a [state] forum . . ."

*Id.* at 779 (citations omitted).

The court analyzes each of the seven *Midgard* factors in turn. As to the first factor, the issue

of court back log is a relatively minor consideration. The evidence presented does not suggest a

backlog in state court. This federal district is currently operating with a judicial vacancy, but neither

party suggests that the court is "backlogged." As a state trial court judge in Tulsa county for a

decade, as the former presiding judge of that court, and with four years of experience in this court,

it has been the undersigned's experience that either court can get a matter like this to trial in a

reasonable time. As for the second factor, this case was initially filed in state court, and was

promptly removed. It has not progressed beyond the present motion to remand and a motion to

dismiss two counts, so it would be relatively easy for a new judge to get up to speed. As for the

third factor, the bankruptcy court has already confirmed SemGroup's Plan, so there is little danger

of disruption.  As for the fourth factor, the issues in this case, though complex, are based upon state law.  PwC argues this court is better positioned to address the complexities of this case because it oversees the SemGroup Multi District Litigation securities case.  However, the MDL litigation has only recently progressed into discovery, and the parties have announced a settlement.  Thus, no efficiencies could be gained by litigating both cases in this court.  The fifth and sixth factors are moot because this proceeding is in a district court rather than a bankruptcy court.  As for the seventh factor,  SemGroup's bankruptcy is a reorganization, and because this case will only affect creditor recoveries, its resolution will not impact the reorganization.

This litigation will not require the court to interpret or even to reference the confirmed plan, because the cause of action arose pre-bankruptcy.  PwC presents no argument as to how the resolution of this case could impede the bankruptcy proceeding itself, but argues that  untimely resolution could slow down creditor recoveries.  The Trustee, however, has demonstrated her preference for vindicating the creditors' rights in state court.  This court is reluctant to second guess the Trustee's determination as to what is best for the creditors, particularly when there is no indication this case will have a collateral affect on other aspects of the bankruptcy proceeding.

PwC urges the court to follow a line of decisions from the Southern District of New York which deal with mandatory abstention in the context of large complex bankruptcy litigation.  One such case is *In re Worldcom, Inc. Securities Litigation*, 293 B.R. 308 (S.D.N.Y. 2003).  The *Worldcom* court denied the motion to abstain, concluding that the "size of the WorldCom bankruptcy, the close connections between the defendants in this action and the debtor, and the complexity of this litigation" suggested that remanding to the state court would only lead to "duplicative motion practice and repetitious discovery."  *Id.* at 331.  The bankruptcy court in *In re*

*Global Crossing, Ltd. Securities Litigation*, 311 B.R. 345, 348 (S.D.N.Y. 2003), found *Worldcom* to be instructive:  "[t]he complexity of the actions, and the overlapping motion practice and discovery that would ensue from the pendency of separate federal and state litigations, would undermine any chance of the required 'timely adjudication.'"  The court observed that the mandatory abstention provision contained in §1334(c)(2):

> "is intended to require federal courts to defer to the state courts to handle lawsuits which, although 'related to' a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts.  That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court. Far from promoting 'timely adjudicat[ion]' of plaintiffs' claims, to remand here would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court."

*Id.* at 349.  Both *Worldcom* and *Global Crossing* were not only intertwined with complex securities class actions pending in federal court, they were also intertwined with complex bankruptcy proceedings.  In contrast, the claims in this case are not intertwined with the bankruptcy proceedings, as the plan has been confirmed.  Although the claims are related to an MDL securities action before this court, the parties therein have announced a proposed settlement. *See Carson v. SemGroup Energy Partners, L.P.*, 4:08-MD-1989-GKF-FHM (N.D. Okla.).

Whyte urges the court to apply the Second Circuit's approach, which focuses on the timely administration of the bankruptcy estate, not on the securities fraud MDL litigation.  The Second Circuit recently stated: "[t]he impact of the state court proceedings on the securities class action itself, absent evidence of prolonging the administration or liquidation of the foreign [bankruptcy] estates, is immaterial to the question of timely adjudication.  Unlike *Worldcom*, the district court

12

here is not charged with administration of a bankruptcy estate." *Parmalat Capital Fin. Ltd. v. Bank of Am.*, 2011 WL 135810 *6 (2nd Cir. 2011). This approach is consistent with that taken by the Tenth Circuit Bankruptcy Appellate Panel in *Midgard,* observing that courts interpreting the phrase "timely adjudication" have "focused on whether allowing an action to proceed in state court will have any unfavorable effect *on the administration of a bankruptcy case*." 204 B.R. at 778. (emphasis added). PwC's concerns are thus misplaced, as this case can be timely adjudicated in state court, and will not interfere with administration of the bankruptcy case. To the extent it may be relevant, there is little reason to fear that remand will have a deleterious effect on the federal securities litigation. This court must therefore abstain.

## IV. Permissive Abstention

In the alternative, this court concludes that permissive abstention is appropriate. Under 28 U.S.C. §1334(c)(1): "nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." The court may also remand the case on any "equitable ground." 28 U.S.C. §1452. "Permissive abstention is a matter within the sound discretion of the bankruptcy court." *In re Tri-Valley Distrib., Inc.*, 350 B.R. 628 *6 (Bankr. 10th Cir. 2006); *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2nd Cir. 2002). Courts have examined a "well-worn list" of 12 factors to determine if permissive abstention is appropriate:

> "(1) the effect that abstention would have on the efficient administration of bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in

> state court or other nonbankruptcy court; (5) the federal jurisdictional basis of the proceeding; (6) the degree of relatedness of the proceeding to the main bankruptcy case; (7) the substance of asserted "core" proceeding; (8) the feasibility of severing the state law claims; (9) the burden the proceeding places on the bankruptcy court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties; (11) the existence of a right to jury trial; and (12) the presence of nondebtor parties in the proceeding."

*In re Commercial Fin. Servs., Inc.*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000).

As to the first factor, this case will affect the bankruptcy estate only insofar as it involves the speed and amount of recovery for the creditors who are beneficiaries of the Litigation Trust. Given that the Trustee has made the decision to file in state court, this factor favors abstention. As for the second factor, there are no federal claims, so state law issues predominate. As for the third factor, PwC contends in its Motion to Dismiss that there are issues of state law implicated in this case which no court in Oklahoma has addressed. (Dkt. #33, p.3). Therefore, this factor favors abstention. The fourth factor favors abstention because the Plan has been confirmed, and this case will not require interpreting the Plan. As for the fifth factor, there is no basis for federal jurisdiction other than "related to" jurisdiction, so this factor weighs in favor of abstention. As for the sixth factor, the  bankruptcy proceedings are related insofar as the creditors may ultimately recover proceeds from the Litigation Trust. This factor weighs slightly in favor of retaining the case. The seventh factor weighs in favor of abstention, as there is no core proceeding implicated here. As for the eighth factor, all of Whyte's claims arise under state law and severance is not an issue, so this factor favors abstention. As for the ninth factor, this proceeding places an additional burden on a federal court with an unfilled judicial position, a factor favoring permissive abstention. As for the tenth factor, there can be no doubt that both parties are seeking to proceed in the forum most favorable

14

to their case, however, neither appears to be engaged in improper forum shopping.  This factor is neutral.  As for the eleventh factor, jury trials are permitted in both state district and federal district courts, so this factor is neutral.  As for the twelfth factor, the parties to this case are nondebtors, so this factor weighs in favor of abstention.  Weighing all the factors, and in the interest of comity and justice, the court concludes it should abstain.

## V.  Conclusion

The court holds that this case is related to a bankruptcy plan or proceeding, and therefore it has subject matter jurisdiction.  However, because this case is based on state law claims and can be timely adjudicated in the state forum without interfering with the bankruptcy proceedings, this court must abstain.  Alternatively, the court concludes it should abstain in the interests of comity and justice.

This case is remanded to the District Court of Tulsa County, Oklahoma.

DATED this 22nd day of March, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

15